Good morning everyone. Before we begin our oral arguments, Judge Gould and I would like to thank Judge Ezra, District of Hawaii, for joining us and helping us with our busy docket. We appreciate your assistance. And we have two cases that are submitted on the briefs at this time, United States v. Early and Thacker v. Bank of New York Mellon. Also just for planning purposes, we will probably take a break after the third argument. So if you're on the last case, you might feel free to, you know, wander or do something else. So with that, we'll begin with the first case. And Mr. Mayer, are you on the phone? Yes, Judge. Good morning. John Maher on behalf of Plaintiff Appellant David Claiborne. Okay, sorry I mispronounced your name. We'll now hear argument in Claiborne v. McCarthy. Thank you, Your Honor. And may it please the Court, this morning I'd like to divide the time of 15 minutes between seven minutes to open. I'd like to reserve, if it's okay, eight minutes for rebuttal. You may do that. Would you change the time so that it runs down in that manner? Okay. Thank you, Your Honor. And may it please the Court, good morning again. John Maher on behalf of Plaintiff Appellant Damon Claiborne. And I propose to begin this morning's argument with pointing out and summarizing at least seven reasons why the panel is completely appropriate to set aside and declare as unlawful the Secretary of the Army's decision to separate Damon Claiborne just months shy of his 20-year retirement. And after briefly walking through those seven points, of course, then I'd like to answer any questions the panel may have before tendering my time to rebuttal. The first reason is we believe the Secretary has set forth in our papers exceeded his statutory authority that the Congress granted him in Section 572 of the National Defense Authorization Act of 2013. In that, the Congress directed the Secretary to implement a policy to remove and process for administrative separation any soldier who was convicted of a sexual offense from active duty as part of that. Excuse me, you're breaking up a little bit. I I'm terribly sorry, Your Honor. What's the last thing you copied? Well, we heard you, but it was starting to break up. So I do have a question about that. Was that one of the issues that you raised in the district court? Yes, ma'am. We've briefed extensively on the Supreme Court cases of Bowen and Landgraf. We've even went into it as part of the briefing before the district court. The United States had conceded that they did not have any authority from the apply it retroactively. And so we briefed it to the judge. But we do believe that the district court failed to properly analyze the idea of being a de novo standard of review should have brought questions raised as to whether or not the Secretary had the statutory authority. Secondly, whether the Secretary could create a retroactive rule. And then thirdly, whether or not actual adjudication of the statutory rulemaking authority was appropriate and lawful under the presumption that legislation and rules are created prospectively rather than... I have a question about the retroactivity point. Under the previous rules, regulations, and policies, your client could have been discharged as a matter of discretion anyway. Is that true? We respectfully disagree, Your Honor. So you think he could not have been separated at the time of his conviction or any time thereafter until this new policy went into effect? Is that your position? No, Your Honor. Our position is this. In 2005, after he returned from having still on active duty and the Army followed its procedures and processed him for administrative separation at that time, a board of officers recommended that he, being a deserving soldier, should be retained. Okay. Okay. We're not communicating well then because I guess my question was they had the right to discharge him at that time. They chose not to do it, but they always have the right to do so, correct? At that time, yes, Judge. And is there any law of which you were aware that prohibits the Army from reconsidering its earlier grant of clemency? Yes, Your Honor. That's in AR 635-200. That's Army Regulation 635-200, which contains a prohibition against administrative double jeopardy. And I believe the actual language, and I'm paraphrasing here, is that the Secretary's plenary authority under Chapter 5-3 only applies when no other provision of the regulation applies. And in this instance, the regulation prohibiting administrative double jeopardy does apply. And the exceptions to that rule is set forth in the regulation 635-200 do not apply to Plaintiff Appellant David Claiborne. So the course of conduct here was at that particular time that after David Claiborne was a judicial sentence, as well as an administrative processing, the rights and obligations of the transaction were fixed. And the parties conducted themselves accordingly such that the Army promoted David Claiborne twice to sergeant and staff sergeant. They sent him to school. They sent him to combat. And they placed the care of junior enlisted soldiers, both male and female, in his care to lead them in combat circumstances. They sent him to professional trainings in schools and also contracted, thought him so deserving of continued service, that they contracted with him to take him through 20 years of active service so he would be eligible for a military active duty retired day. Then only in 2013, with the promulgation of the Secretary's Alleract and Directive, did Staff Sergeant Claiborne get swept up. So the idea was that in a short seven months, all parties' interests could have been satisfied here. In seven months, David Claiborne could have been retired. And in seven months, the Army could have had him off of its roles. But instead, we have constitutional issues here. And by virtue of that, the record is devoid. And it's on the Secretary's part that they took a hard look at what was apparently a very simple solution. In the short seven months, in the intervening 10 years, there was no urgency to remove Sergeant Claiborne. Instead, the Army promoted him and did wonderful things for him, and he was reciprocated with excellent service and an honorable record. But nowhere in any of the records before the court will you see that the Secretary said, well, if we just wait seven months, everybody's interests are satisfied here. So with that said, in the papers, returning to the opening points, there's no congressional grant of retroactive application authority. And the United States has stipulated to that in its papers. Moreover, during the course of the separation proceedings, out of thin air, the Secretary contrived a demonstrated proclivity as a basis to separate Sergeant Claiborne. Well, I don't read the decision that way. To be just speaking for myself, there is a stray mention of the word proclivity. But it appears, just from my reading of it, that the reason is the conviction. And the directive or the policy or the memorandum, however we describe it, pertains to those convicted of a discharged or dismissed. So I guess I just don't read that as being part of the actual decision. Well, Judge, of course, I respect that. But at the same time, Chenery, a Supreme Court case from 1947, instructs us that we're supposed to take the agency and the Secretary at the actual record and reasons they provided. Right. And the main reason they provided was the conviction. And the question is whether that stray sentence alters the primary basis, which is the conviction. We believe it does, Judge. And here's why. The Secretary didn't chose that specific language. The Secretary said that they re-evaluated Claiborne's service. And in light of his demonstrated proclivity for sexual misconduct, his services were no longer required. No, I don't know how we can weed that out. You have used more than your allotted initial time. Did you still wish to have the long rebuttal time? Yes, Judge. Thank you very kindly. I'm happy to tend to the point. We'll hear from the government. Good morning, Your Honors. May it please the Court, Assistant U.S. Attorney Sean Martin, on behalf of the Army Secretary, I ask that you affirm Judge Brown's summary judgment order in the Secretary's favor in this case brought under the Administrative Procedure Act. As we know, the Army Secretary made a decision to separate Mr. Claiborne for the government's convenience under its Army regulation. You know, this seems like a rather straightforward case to me. Maybe I'm missing something here. But it with the Army's processes, the judicial processes provided by the Army, or quasi-judicial processes, reviews and so forth, the people who were in touch with him, people who had closer contact with him, all recommended either retirement or allowing him to stick around or retention. I mean, he was promoted, he was retained. And it just, then we have a blanket policy, which is laid out by the Secretary, which kind of scoops him up and treats him in the same way as it would somebody who had been convicted of child molestation six months before the policy went into effect. Now, that's the way it is. The question is, in this case, is it constitutional? That's it, it seems to me. Well, if that's the question, Your Honor, we don't think that there really have been constitutional questions brought in this appeal. There's an administrative double jeopardy argument that the Army didn't follow its regulatory scheme in this Army regulation. I thought double jeopardy was unconstitutional. But anyway, go ahead. Well, the argument as we've read it is that it was a violation of the Army regulation, Chapter 117. I think he's arguing both. I'm sorry. I was just going to say, is administrative double jeopardy constitutional the way criminal double jeopardy is, in that, although it certainly feels punitive to the plaintiff here, it is not a criminal punishment to be separated from the Army. Well, that's right. This court, I believe, in the United States v. Smith, held somewhat similar context. The same Army regulation, Chapter 10, discharge in lieu of a court-martial, a dishonorable discharge, I understand it, was not a punitive sanction, that it was an administrative separation. Right. No, I understand that. I'm just saying I thought the argument from the other side was that there were constitutional elements here. I don't... You know, my understanding of the opposition's argument on retroactivity is largely based on the Supreme Court's ruling in the Bowen case regarding the Medicare payments. And the court in that instance identified a statutory problem, right, that the regulation went beyond what Congress had authorized and wasn't a constitutional question. So we would take issue with characterizing that line of attack. The bottom line is the question is whether the Secretary had the authority to do what the Secretary did. And the answer is yes. You know, the Army regulation here all along, even before the Army directive, allowed for the Secretary to exercise his plenary authority and his discretion for the government's convenience to discharge a soldier. So without... Let's go back earlier when the initial proceedings occurred and the decision was made not to regulations, could the Secretary have changed his or her mind at any time? Yes. Yes. And there'd be no administrative double jeopardy? Right. And one thing I would point out about the administrative double jeopardy point, Your Honor, is that Chapter 117 of the Army regulation restricts follow-up discharge proceedings only with regard to the Secretary's retention of his authority to discharge for the government's convenience. So there's nothing in the regulatory scheme that sets forth that these earlier proceedings in Mr. Claiborne's case were settled and final. The regulations very much leave open in various points in the regulation that the Secretary has discretion, retains discretion under Chapter 5-3 to discharge a member for the convenience of the government. Counsel, could I ask you to elaborate on that last point? The main question that I had in my mind was whether the controlling issue here was whether the Secretary acted contrary to law in the regulations or whether it was a question of exercise of discretion? Well, the Secretary had the authority under the Army regulation to consider Mr. Claiborne for discharge for the government's convenience. So our view is that there was not a violation of law. Does that answer Your Honor's question? It does. And if it's a question of discretion, what is the Ninth Circuit standard? I know that some courts are cited in the District Court decision that said that we should be extremely deferential. But I didn't read the Ninth Circuit to have said that. It just says arbitrary and capricious. Well, it's true. You know, the District Court noted that the parties hadn't briefed any Ninth Circuit law about review of an ABCMR decision, the Army Board for the Correction of Military Records, if that was a new issue. I would point out that at times this court seems to have reviewed similar types of decisions by the military under the modified Mendes test. For example, the Christofferson case that the government cited in its response brief. And our view is if even if this court uses the modified Mendes test adopted by this court, that the outcome would be the same. We would argue if that were the applicable test that this wouldn't necessarily even be reviewable because of the degree of interference with military function and military judgment calls regarding internal personnel management. It does seem rather harsh that this individual was apparently serving satisfactorily and was very close to retirement. It feels punitive and I understand why the plaintiff characterizes it as punitive. That's just an observation, but does that play at all into the analysis? Well, it's something that the Army actually did explicitly consider. You know, obviously, Mr. Claiborne had financial expectations. He had retirement plans. He had served the military long and he had military expertise. But to be clear, that's something that the Army Board, the ABCMR, did explicitly take into account. And it noted, I believe that's at SER 39 and in Judge Brown's opinion at ER 42 and 43, that cases like this present the military with difficult decisions, right? Do we recognize the service and the military expertise of this member or do we need to also credit the Army's interest in doing its best to ensure unit cohesiveness and unit discipline, especially when you have overseas deployments, you know, as a natural part of active duty military service. And so I think it's fair that the military weighed the equities and chose subjectively but appropriately here to come down on the side of, you know, sex abuse convictions, especially the one here where you have child molestation of a 12 to 13-year-old girl by someone who was 33-year-olds at the time, that that was serious enough basically on reconsideration that the Army would prefer to administratively discharge the soldier, clean up its ranks, if you will, and make sure that its soldiers can be ready to be deployed overseas and to potentially serve in positions of trust in their deployments. Now, I will acknowledge that the Army clearly, you know, took a harder look at its regulations and its exercise of discretion in light of what Congress enacted in 2013, but I would want to really emphasize that this whole challenge to the directive in light of Section 572 of the Public Law 112-239, that is basically, I would submit a rather sudden attempt to broaden this case on appeal for the first time to a facial challenge to the directive. I would point out to the panel that Mr. Claiborne never raised the Section 572 argument to the ABCMR. If you look at SCR 11-17, that was where that board summarized all of Mr. Claiborne's arguments. There are many arguments. None of them identified Section 572 at all. And if we look at the amended complaint before Judge Brown, ER 56-58, there were, I believe, eight distinct APA theories, and none of them mentioned Section 572 or this public law, any kind of problem with that congressional enactment. And then we have Judge Brown relying on Mr. Claiborne's representation that he was not challenging the substance of the Army directive. Yeah, that's at SCR 2. In his brief, he says the Army incorrectly claims Claiborne challenges the substance of the directive and the Aller Act. He does not. Instead, he challenges retroactive application of them. We also have a problem, too, along similar lines, Your Honor, that Mr. Claiborne had represented to the district court that it was appropriate for the Army to, quote, police the ranks for those who may have had a sexual assault conviction in their past. And that representation is at SCR 4. You know, I don't, in my, look, as a, as someone who was a former Army officer, and I looked at this very carefully, I don't think anybody would doubt or question the seriousness of the conviction in this case and the appropriateness of the Army, should they have chosen to do so, of removing him from service at or around the time that it became their opportunity to do so. But they, of course, didn't do so. And instead, they retained him, thereby depriving him of an opportunity to build a career somewhere else. And based on his good other, otherwise good evaluations, let him stay in the service, sent him off to overseas deployments, which I believe included combat. And then when he gets back, he continues to do well. All of his superiors give him good ratings and recommend his retention. He gets promoted at least twice in the record. And yet the board says, well, you know, he's been swept up in this, and it's for the good they do have the authority. But I can tell you, if this was a de novo review, which it isn't, the board would certainly be in trouble with me. Because, I mean, there's something called fundamental fairness in our law. That's the basis of it. And one would wonder how you can keep somebody on board for all of these years and encourage them to stay and give them promotions and praise them and send them off to combat, and then come back and say, you know, all these years ago, you committed this offense for which we could have sent you packing, but we didn't. We kept you on. But now we're, we've got a blanket policy and away you go. That is not to excuse what he did. But I think that it just kind of, I don't know, I have a sense like Judge Graber does, I believe from her comments, that it's pretty harsh. I have a related question. And that is whether there was any effort made in this case to mediate through our mediation process attached to the court. There was. There was. We had a phone call with Mr. Claiborne. You don't need to give me the details, but I gather that that was unsuccessful. Yes. And is it your view that it would be unsuccessful to try again? Or let me just ask it differently because you don't really know the answer to that. Nobody does. Would the government be willing to try again? I wouldn't, I wouldn't rule it out. Yes. Okay. And Judge Ezra, just to your comment just a minute ago, I would, you know, it just seems so, so harsh and unfair. Something that I think to bear in mind is, you know, I made the point that the regulations don't, don't bar the Secretary's later exercise of his authority, right? That's something to also keep in mind here is that the under chapter 14 of the Army regulation were undertaken and the orders there were by the Fort Lewis commander. And I would submit, it makes a lot of sense when you're concerned about sex convictions and sex offenders in the military to have the Secretary look at those cases. And, you know, that's, that's what the military is now doing. My whole point was the time to have discharged him, in my view, because this was a serious, serious crime would have been at about the time he got out of prison. Yes, Your Honor. I see that my time has expired. If there are any other questions from the panel. No questions. I think we have no further questions. Thank you. Thank you. Mr. Marr, you have rebuttal time remaining. Thank you, Judge. I'd like to make three points if I may. Number one, to address the comment that the United States presented, that this is not a question of the constitution. We respectfully disagree and believe that separation of powers is implicated. Notice, due process, ex post facto considerations, as well as fundamental fairness. And the separation of powers issue we do believe requires a de novo standard of review. And here's why. If we look at how the statute was vesting and directing the Secretary to implement this policy, the Secretary put it upon himself to insert the problematic temporal language, regardless of when the conviction occurred in the absence of any specific grant of congressional retroactive application in terms of rulemaking and or adjudication. So with that said, under de novo review, the issue really becomes not whether or not we're deferring to a military personnel law decision, but instead whether or not article one properly delegated its statutory authority to an article to non elected official who is not accountable to an electorate or to an election, who then took it on himself to do a broad sweeping canvas of the ranks in violation of the presumption of prospective legislation and rulemaking to then destroy this man's family. He's a father, a married man with eight dependent children. So with all of those things, we can look at the pension benefit guarantee case that we cited in our papers. That's an example of where Congress did evaluate whether or not to apply a statute and or rules retroactively. And the court upheld that retroactive application, even subject to due process and equal protection concerns, because the Congress determined a legitimate proposed legitimate government legislative objective there. That didn't happen here. If the Congress really intended for the secretary to do a broad sweeping canvas of the ranks to go back 10 years and disrupt a transaction that had been settled favorably to Sergeant Claiborne such that he could quote soldier on for the next 10 years and even contract for every active duty retirement, they would have made that finding invested in the secretary that authority that's absent here. And with respect, we believe that the United States has no way around that. They've not disputed the fact that the secretary took that language out of whole cloth. It's not contained anywhere in the statutory grant or mandate. And by virtue of that, we are now before the court. The second piece that I'd like to talk is the idea that the United States relies heavily on this being a military personnel law decision. With respect, it's really not. That's part of the equation. But the fundamental starting point and ending point we believe in an offer to the court is whether or not the secretary exceeded his statutory or statutory authority in promulgating a retroactive rule and then adjudicating adjudicating it against Claiborne with a 10 year old transaction where the party's rights and obligations have been fixed. And of course, we see Bowen, you know, that's, that's, excuse me, counsel that I think that's a point where I have difficulty. And I think I may have asked you about that in your opening remarks as well. I guess I don't see anything in really anywhere that would have prevented the secretary from changing his mind earlier. You know, suppose, suppose, you know, one month after the decision had been made, they'd said, Oh, you know, we've looked at it again. And we've changed our mind. Is it your view that even that under the old system, everything truly was fixed in stone and could not have been rethought? Your Honor, speaking to fundamental fairness? Yes. The idea is the regulation applies. And the army regulation clearly says that those who have been subjected to a judicial or administrative proceeding, where the circumstances have resulted in that they should not be separated, but retained, that applies. And the Secretary's plenary authority saying that, you know, 10 years from now, I could go ahead and separate you at the 11th hour and 59th minute after your combat service. Well, that to me is the benchmark of arbitrary and capricious in the regulation controls. And the Secretary's plenary authority can't be unfettered. To the extent you're concerned, Judge, we would cite to you, as we cited in our papers, the service v. Dulles case, in which the Secretary of State had unfettered discretion to remove any foreign service officer pursuant to his own discretion. However, the Supreme Court said, you still have to follow your regulations, even though you have a grant of discretion. That didn't happen here, Judge. And that's what we submit to the court is the constitutional problem. There's the equities, of course, which are troubling. But this case rises and falls, we submit, on the constitutional analysis of whether or not the Secretary had the authority to do what he did. And in this particular instance, we propose that he did not. So subject to your questions, Your Honors, we thank you very kindly, and that will conclude our remarks. Thank you, counsel. The case just argued is submitted, and we appreciate the arguments from both of you. Thank you.
judges: Graber, Gould, Ezra